Marc J. Randazza, Esq. CA Bar No. 269535
Randazza Legal Group
6525 Warm Springs Rd., Suite 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 (fax)
mjr@randazza.com

Attorney for Plaintiff,
LIBERTY MEDIA HOLDINGS, LLC

FILED
CLERK, U.S. DISTRICT COURT

APR 19 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                               DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LIBERTY MEDIA HOLDINGS, LLC )
)
)
Plaintiff, )
)
vs. )
)
)
JOHN DOE and KYAW AUNG, )
)
Defendants )
)
)
)
)

Case No.

CV12-3428 — RGK
(FMOx)

COMPLAINT

(1) **DIRECT COPYRIGHT INFRINGEMENT – 17 U.S.C. § 106(1)**
(2) **DIRECT COPYRIGHT INFRINGEMENT – 17 U.S.C. § 106 (3)**
(3) **CONTRIBUTORY COPYRIGHT INFRINGEMENT**
(4) **NEGLIGENCE**

**BY FAX**

Plaintiff, Liberty Media Holdings (hereinafter "Liberty" or the "Plaintiff") files this complaint against Defendants John Doe and Kyaw Aung and alleges as follows:

## I. NATURE OF THE CASE

1.      Plaintiff is the registered owner of the copyright to a motion picture, "Down on the Farm" (hereinafter the "Motion Picture").  A true and correct copy of the Certificate of Registration for the Motion Picture is attached hereto as Exhibit 1.

2.      Defendants John Doe and Kyaw Aung acted in a collective and interdependent manner with other internet users in the unlawful reproduction and distribution of Plaintiff's Motion Picture using BitTorrent file transfer protocol.

3.    Each time an individual unlawfully distributes a copy of Plaintiff's copyrighted Motion Picture to others over the Internet, particularly via BitTorrent, each recipient can then distribute that unlawful copy of the Motion Picture to others without degradation in sound or picture quality.   Thus, Defendants' distribution of even a single unlawful copy of the Motion Picture can result in the nearly instantaneous worldwide distribution of that single copy to a limitless number of people.   In this case, Defendants' copyright infringement built upon the prior infringements, in a cascade of infringement.

4.    Plaintiff seeks redress for the Defendants' rampant infringement of its exclusive rights in the Motion Picture, for injunctive relief to stop Defendants from continuing to infringe upon Plaintiff's copyrighted works, and for compensation for Aung's negligence.

## II.  JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over Plaintiff's claims for copyright infringement and related claims pursuant to 17 U.S.C. §§ 101, et. seq., and 28 U.S.C.  §§ 1331 and 1338(a).

6.    Defendants either reside in, solicit, transact, or are doing business within the Jurisdiction; the I.P. (Internet Protocol) address that the Defendants used to illegally distribute the Plaintiff's copyrighted works was located in this district.   As such, Defendants have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction.

7.    Plaintiff's claims arise out of the Defendants' conduct which occurred within this district and gives rise to personal jurisdiction over Defendants.

8.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a). On information and belief, Defendants may be found in this District and/or a substantial part of the infringing acts complained of herein occurred in this District, and Defendants can reasonably anticipate being hauled into court in this District.

## III.  THE PARTIES

### A.  The Plaintiff, Liberty Media Holdings, LLC

9.    Liberty is a California limited liability company with an address of 4262 Blue Diamond Road, Suite 102-377, Las Vegas, NV 89139.  Plaintiff Liberty produces high-quality, adult-themed motion pictures, which it sells to adults only.

**B.  The Defendants, John Doe and Kyaw Aung**

10.     Defendant Doe used IP address 71.177.245.102 to illegally republish and illegally distribute copies of the Plaintiff's copyrighted Motion Picture through the use of the AE3 Hash to an unknown number of other individuals over the Internet.

11.     This IP address belonged to and was registered with Defendant Aung.

12.     Defendant Aung allowed Defendant Doe to utilize their internet connection to distribute Plaintiff's work.  In the alternative, Doe and Aung are the same person and will be revealed as such in discovery.

13.     The Plaintiff's investigation detected this illegal activity on November 16, 2010 at 07:01:59 PM GMT.  However, the conduct took place both before and after this date and time.

14.     Furthermore, the Defendant Doe was not necessarily at his computer at this date and time, as the illegal distribution through Bit Torrent takes place on an ongoing and automated basis, once commenced by the user.

15.     The Defendant Doe was part of a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm".  The particular file a BitTorrent swarm is associated with has a unique "hash" (a file identifier generated by an algorithm developed and implemented by the National Security Agency).  The hash value in this case is identified as AE340D0560129AFEE8D78CE07F2394C7B5BC9C05 (hereinafter the "AE3 Hash").

16.     Plaintiff alleges on information and belief that the Defendants named herein performed, participated in, or abetted in some manner, the acts alleged herein, proximately caused the damages alleged and are liable to Plaintiff for the damages and relief sought herein.

**IV.  COPYRIGHT AND BITTORRENT**

17.     BitTorrent is a peer-to-peer file sharing protocol used for distributing and sharing data on the Internet, including files containing digital versions of motion pictures.  A protocol is a type of language that one computer uses to communicate with another computer over a network.  Many protocols exist that allow one computer to download materials from another computer.  One common example is HyperText Transfer Protocol, represented by the http:// before the "www" in a website address.

18.     BitTorrent protocols, however, are different and substantially more powerful than the HyperText Transfer.  Rather than downloading a file from a single source, like the server of a website, the BitTorrent protocol allows users to join a "swarm," or group, of computers connected through the protocol to download and upload from each other simultaneously.

19.     To participate in a BitTorrent swarm, a user must intentionally download and install a specialized piece of software called a BitTorrent client.

20.     A user must then locate and download a .torrent file.  These torrent files are not the entirety of the work the user seeks to acquire.  The .torrent file contains a unique hash code known as the SHA-1 hash – a unique identifier generated by a mathematical algorithm developed by the National Security Agency.

21.     This file contains a "roadmap" to the IP addresses of other users who are sharing the media file identified by the unique hash value, as well as specifics about the media file. These torrent files do not contain audio or visual media, but instruct the user's BitTorrent client where to go and how to obtain the desired file.  The media file could be any large file, such as a digital motion picture, music file, or even an entire run of a television show.

22.     After locating the desired torrent file, the user opens the file with a BitTorrent client.  These programs are capable of reading the roadmap encoded in the torrent file.  This client program, after reading the roadmap, connects "uploaders" of the file (i.e. those that are distributing the content) with "downloaders" of the file (i.e. those that are copying the content). During this process, the client reaches out to one or more "trackers" that are identified on the roadmap.

23.     The downloading user's BitTorrent client then extracts a list containing one or more tracker locations, which it uses to connect to at least one tracker that will identify IP addresses where the file is available.  A tracker is an Internet server application that records the IP addresses associated with users who are currently sharing any number of media files identified by their unique hash values and then directs the BitTorrent client to other users who have the particular file each user is seeking to download.

24.     Each IP address identifies an uploading user who is currently running a BitTorrent client on his or her computer and who is currently offering the desired motion picture file for download.  The downloading user's BitTorrent software then begins downloading the motion

picture file without any further effort from the user, by communicating with the BitTorrent client programs running on the uploading users' computers.

25.     As such, joining a swarm and obtaining an audiovisual work through the BitTorrent system is no simple matter.  It is a complex procedure requiring conscious deliberation and choice that, by its very nature, cannot be accomplished by accident.

26.     The life cycle of a file shared using BitTorrent begins with just one individual – the initial propagator, sometimes called a "seed" user or "seeder."  The initial propagator intentionally elects to share a file with a torrent swarm.

27.     The original file, in the instant matter, contains a copy of Plaintiff's entire copyrighted work.

28.     Other members of the swarm connect to the seed to download the file, wherein the download creates an exact digital copy of Plaintiff's copyrighted work on the downloaders' computers.  As additional infringers request the same file, each additional infringer joins the collective swarm, and each new infringer receives the same or different pieces of the file from each other infringer in the swarm who has already downloaded any part of the file.

29.     Files downloaded in this method are received in hundreds or even thousands of individual pieces.  Each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same complete file. The effect of this technology makes every downloader also an uploader of the content.  This means that every user who has a copy of the infringing material in a swarm may also be a source for later downloaders of that material.

30.     In the BitTorrent world, there is "honor among thieves."  Those who merely download files, without publishing and sharing files, are derisively called "leechers."  Being a leecher is not only a negative due to the pejorative terminology, but leechers are also punished by the torrent swarm.

31.     BitTorrent's protocol stalls the downloads of leechers, in an effort to preserve network speed for the more prolific copyright infringers – the seeders.

32.     This distributed nature of BitTorrent leads to a rapid viral sharing of a file throughout the collective peer users.  As more peers join the collective swarm, the frequency of successful downloads also increases.  Due to the nature of the BitTorrent protocol, any user is

automatically a source for any subsequent user.  Every infringer is – by design and necessity – simultaneously copying the Plaintiff's copyrighted material and redistributing it.

33.    Plaintiff recorded Defendant Aung's IP address being used to publish and redistribute the Motion Picture via BitTorrent.  Therefore, Aung, Doe, or both were not a leechers, but a seeders.  They seeded to reap the benefits granted to a seeder.  This benefit was not in actual cash, but had substantial pecuniary value: access to volumes upon volumes of infringing copies of materials.  In the online swap meet of pirated motion pictures, sharing is not just caring; sharing is currency.

34.    Plaintiff's Motion Picture is easily discernable as a professional work.  Plaintiff created the works using professional performers, directors, cinematographers, lighting technicians, set designers and editors.  Plaintiff created each work with professional-grade cameras, lighting, and editing equipment.

35.    Each of Plaintiff's works is marked with Plaintiff's trademark (CORBIN FISHER®), a copyright notice, a warning that unauthorized copying is illegal and will be prosecuted, and a statement as required by 18 U.S.C. § 2257 that age verification records for all individuals appearing in the works are maintained at corporate offices.

**V.  FIRST CAUSE OF ACTION**
**(Copyright Infringement 17 U.S.C. § 106(1))**
**(Reproduction of Copyrighted Work)**
**(Against Defendant John Doe)**

36.    The Plaintiff re-alleges and incorporates by reference the allegations contained in each paragraph above.

37.    Plaintiff is, and at all relevant times has been, the copyright owner of the copyrighted work infringed upon by Defendant, "Down on the Farm."  Exhibit 1.

38.    Among the exclusive rights granted to each Plaintiff under the Copyright Act are the exclusive rights to reproduce the Motion Picture – rights which Defendant maliciously and intentionally infringed upon.

39.    Defendant illegally obtained a copy of Plaintiff's Motion Picture "Down on the Farm."

40.    This Motion Picture is available for sale through the Plaintiff's online platform CF Select, or through purchase as a DVD.

41.     Defendant violated Plaintiff's exclusive rights by illegally copying Plaintiff's Motion Picture to his computer hard drive.  Defendant's actions constitute infringement of Plaintiff's copyrights and exclusive rights under the Copyright Act.

42.     Plaintiff is informed and believes, and on that basis alleges, that the foregoing acts of infringement were willful and intentional.

43.     As a result of Defendant's infringement of Plaintiff's copyrights and exclusive rights under the Copyright Act, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504(c), and to its attorney fees pursuant to 17 U.S.C. § 505.

44.     The conduct of Defendant is causing and will continue to cause Plaintiff great and irreparable injury.  Such harm will continue unless the Defendant is enjoined from such conduct. Plaintiff has no adequate remedy at law.

45.     Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendant from further infringing Plaintiff's copyrights, and ordering Defendant to destroy all copies of the Motion Picture made in violation of Plaintiff's exclusive rights under the Copyright Act.

**VI.  SECOND CAUSE OF ACTION**
**(Copyright Infringement 17 U.S.C. § 106(3))**
**(Distribution of Copyrighted Work)**
**(Against Defendant John Doe)**

46.     The Plaintiff re-alleges and incorporates by reference the allegations contained in each paragraph above.

47.     Among the exclusive rights granted to each Plaintiff under the Copyright Act are the exclusive rights to distribute the Motion Picture – rights which Defendant maliciously and intentionally infringed upon.

48.     Defendant without the permission or consent of Plaintiff, has used, and continues to use, the BitTorrent file transfer protocol to distribute the Motion Picture to the public by publishing it to hundreds of thousands of BitTorrent users from his computer, which acted as, or is acting as, a distribution server for the film.  In doing so, Defendant has violated Plaintiff's exclusive rights of reproduction and distribution.  Defendant's actions constitute infringement of Plaintiff's copyrights and exclusive rights under the Copyright Act.

49.     The foregoing acts of infringement were willful and intentional.

50.     As a result of Defendant's infringement of Plaintiff's copyrights and exclusive rights under the Copyright Act, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504(c), and to its attorney fees pursuant to 17 U.S.C. § 505.

51.     The conduct of Defendant is causing and will continue to cause Plaintiff great and irreparable injury.  Such harm will continue unless the Defendant is enjoined from such conduct. Plaintiff has no adequate remedy at law.

52.     Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendant from further infringing Plaintiff's copyrights, and ordering Defendant to destroy all copies of the Motion Picture made in violation of Plaintiff's exclusive rights under the Copyright Act.

## VII.  THIRD CAUSE OF ACTION
### (Contributory Copyright Infringement)
### (Against Defendant John Doe)

53.     Plaintiff re-alleges and incorporates by reference the allegations contained in each paragraph above.

54.     It is helpful to think of the process of "torrenting" in the context of a constructed puzzle.  In furtherance of sharing this puzzle, it is deconstructed into tiny pieces.  These pieces are then uploaded and distributed among one or more peers.  When an infringer seeks to download the original file, he downloads a torrent file containing information concerning where each of the distributed pieces of the file can be found, i.e., how to find and contact each peer. Each torrent file that contains information about the same original file is contains the same "hash" value, which is a string of letters and numbers that uniquely identifies the original file that the torrent file may be used to locate and download.  This torrent file is capable of locating all the unique corresponding pieces that make up the original file (and any additional copies of each piece that may be available).  Once all the pieces are located and downloaded they are reconstructed back into the original order completing the entire original copyrighted file.

55.     When users all possess the same infringing work with the same exact hash value (as in this case), it is because each infringer possesses an exact digital copy, containing the exact bits unique to that file, of the original work.  In essence, although hundred of users may be

uploading the copyrighted work, you will receive only the exact parts of a singular upload, not a compilation of available pieces from various uploads.

56.     Defendant published the AE3 Hash to the BitTorrent network.

57.     Defendant downloaded, uploaded and distributed the Motion Picture to other BitTorrent users through use of the hash-specified protocol.

58.     BitTorrent users upload infringing works in concert in order to gain access and ability to download other infringing copyrighted works.

59.     As each of the thousands of people who illegally downloaded the movie accessed this illegal publication, they derived portions of their illegal replication of the file from multiple persons, including but not limited to the Defendant named in this action.

60.     The Defendant knew of the infringement, was conscious of his own infringement, and the Defendant was conscious of the fact that multiple other persons derivatively downloaded the file containing the Plaintiff's Motion Picture.

61.     The infringement by other BitTorrent users could not have occurred but for the Defendant's participation in uploading the Plaintiffs protected work.  As such, the Defendant's participation in the infringing activities of others is substantial and contributed, for profit, to the infringing activity of thousands of other parties, world wide.

62.     The Defendant profited from this contributory infringement by way of being granted access to a greater library of other infringing works, some of which belonged to the Plaintiff and some of which belonged to other copyright owners.

## VIII.  FOURTH CAUSE OF ACTION
### (Negligence)
### (Against Defendant Kyaw Aung)

63.     Plaintiff re-alleges and incorporates by reference the allegations contained in each paragraph above.

64.     Defendant accessed, or controlled access, to the Internet connection used in performing the unauthorized copying and sharing of Plaintiff's Motion Picture described above, proximately causing financial harm to Plaintiff.

65.     Defendant had a duty to secure his Internet connection.  Defendant breached that duty by failing to secure his Internet connection.

66.     Reasonable Internet users take steps to secure their Internet access accounts to prevent the use of such accounts for nefarious and illegal purposes.  As such, Defendant's failure to secure his Internet access account, and thereby prevent such illegal uses thereof, constitutes a breach of the ordinary care that reasonable persons exercise in using an Internet access account.

67.     In the alternative, Defendant secured his connection, but permitted John Doe to use the connection and the Defendant knew or should have known that Doe used his connection for the aforementioned illegal activities.  The Defendant declined to monitor the third party use of his connection, thus demonstrating additional negligence, or, Defendant knew the third party was using the connection for illegal purposes and thus was complicit in the third party's actions.

68.     Upon information and belief, Plaintiff alleges that Defendant's failure to secure his Internet access or the Defendant's knowing participation in John Doe's actions, allowed for the copying and sharing of Plaintiff's Motion Picture by use of the BitTorrent protocol on Defendant's Internet connection, and interfering with Plaintiff's exclusive rights in the copyrighted work.

69.     By virtue of this unsecured access, Defendant negligently allowed the use of his Internet access account to perform the above-described copying and sharing of Plaintiff's copyrighted Motion Picture.

70.     Had Defendant taken reasonable care in securing access to his Internet connection, or monitoring third party use, such infringements as those described above would not have occurred by the use of his Internet access account.

71.     Defendant's negligent actions allowed others to unlawfully copy and share Plaintiff's copyrighted Motion Picture, proximately causing financial harm to Plaintiff and unlawfully interfering with Plaintiff's exclusive rights in the Motion Picture.

## PLAINTIFF'S REQUEST FOR RELIEF

1.     For an injunction providing:

Defendants shall be and hereby are enjoined from directly or indirectly infringing upon the Plaintiff's copyrights in the Motion Picture or any other works, whether now in existence or later created, that are owned or controlled by Plaintiff (or any parent, subsidiary, or affiliate of Plaintiff), including without limitation by using the Internet or any online media distribution system

to reproduce (i.e., download) any of Plaintiff's works, to distribute (i.e., upload) any of Plaintiff's works, or to make any of Plaintiff's works available for distribution to the public, except pursuant to a lawful license or with the Plaintiff's express consent. Defendants also shall destroy all copies of Plaintiff's works that Defendants have downloaded onto any computer hard drive or server and shall destroy all copies of those downloaded works transferred onto any physical medium or device in Defendant's possession, custody, or control.

2.    For damages for each infringement of the copyrighted work pursuant to 17 U.S.C. § 504. These damages may be actual or statutory, but if statutory damages are elected, the Defendants' acts were willful in nature, justifying an award of up to $150,000 per infringement, and Plaintiff reserves the right to make such an election.

3.    For Plaintiff's costs in this action.

4.    For Plaintiff's attorneys' fees incurred in bringing this action.

5.    For such other and further relief, either at law or in equity, general or special, to which the may be entitled.

Date: April 18, 2012

Marc J. Randazza, Esq. CA Bar No. 269535
Randazza Legal Group
6525 Warm Springs Rd., Suite 100
Las Vegas, NV 89118
888-667-1113
305-437-7662 (fax)
mjr@randazza.com

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| Liberty Media Holdings, LLC | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. **CV12-3428**-RGK |
| John Doe and Kyaw Aung | ) | (FMOx) |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Kyaw Aung
1573 S Reservoir St, Apt. F
Pomona, CA 91766

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Marc J. Randazza, Randazza Legal Group
6525 W. Warm Springs Road, Suite 100
Las Vegas, NV 89118

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: APR 2 0 2012
_____    _____
                                                *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑  I returned the summons unexecuted because _____ ; or

❑  Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0   .

I declare under penalty of perjury that this information is true.


Date: _____


_____
*Server's signature*


_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge R. Gary Klausner and the assigned discovery Magistrate Judge is Fernando M. Olguin.

The case number on all documents filed with the Court should read as follows:

## CV12- 3428 RGK (FMOx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Liberty Media Holdings, LLC

**DEFENDANTS**
John Doe and Kyaw Aung

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Marc J. Randazza, Randazza Legal Group
6525 W. Warm Springs Road, Suite 100, Las Vegas, NV 89118
t 888-667-1113; f 305-437-7662

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☑ **MONEY DEMANDED IN COMPLAINT:** $ 150

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
17 U.S.C. 501

**VII. NATURE OF SUIT** (Place an X in one box only.)

OTHER STATUTES: ☐ 400 State Reapportionment ☐ 410 Antitrust ☐ 430 Banks and Banking ☐ 450 Commerce/ICC Rates/etc. ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations ☐ 480 Consumer Credit ☐ 490 Cable/Sat TV ☐ 810 Selective Service ☐ 850 Securities/Commodities/Exchange ☐ 875 Customer Challenge 12 USC 3410 ☐ 890 Other Statutory Actions ☐ 891 Agricultural Act ☐ 892 Economic Stabilization Act ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act ☐ 895 Freedom of Info. Act ☐ 900 Appeal of Fee Determination Under Equal Access to Justice ☐ 950 Constitutionality of State Statutes

CONTRACT: ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 151 Medicare Act ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholders' Suits ☐ 190 Other Contract ☐ 195 Contract Product Liability ☐ 196 Franchise

REAL PROPERTY: ☐ 210 Land Condemnation ☐ 220 Foreclosure ☐ 230 Rent Lease & Ejectment ☐ 240 Torts to Land ☐ 245 Tort Product Liability ☐ 290 All Other Real Property

TORTS PERSONAL INJURY: ☐ 310 Airplane ☐ 315 Airplane Product Liability ☐ 320 Assault, Libel & Slander ☐ 330 Fed. Employers' Liability ☐ 340 Marine ☐ 345 Marine Product Liability ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability ☐ 360 Other Personal Injury ☐ 362 Personal Injury-Med Malpractice ☐ 365 Personal Injury-Product Liability ☐ 368 Asbestos Personal Injury Product Liability

IMMIGRATION: ☐ 462 Naturalization Application ☐ 463 Habeas Corpus-Alien Detainee ☐ 465 Other Immigration Actions

TORTS PERSONAL PROPERTY: ☐ 370 Other Fraud ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage ☐ 385 Property Damage Product Liability

BANKRUPTCY: ☐ 422 Appeal 28 USC 158 ☐ 423 Withdrawal 28 USC 157

CIVIL RIGHTS: ☐ 441 Voting ☐ 442 Employment ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 445 American with Disabilities - Employment ☐ 446 American with Disabilities - Other ☐ 440 Other Civil Rights

PRISONER PETITIONS: ☐ 510 Motions to Vacate Sentence Habeas Corpus ☐ 530 General ☐ 535 Death Penalty ☐ 540 Mandamus/Other ☐ 550 Civil Rights ☐ 555 Prison Condition

FORFEITURE / PENALTY: ☐ 610 Agriculture ☐ 620 Other Food & Drug ☐ 625 Drug Related Seizure of Property 21 USC 881 ☐ 630 Liquor Laws ☐ 640 R.R. & Truck ☐ 650 Airline Regs ☐ 660 Occupational Safety /Health ☐ 690 Other

LABOR: ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Railway Labor Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act

PROPERTY RIGHTS: ☑ 820 Copyrights ☐ 830 Patent ☐ 840 Trademark

SOCIAL SECURITY: ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g))

FEDERAL TAX SUITS: ☐ 870 Taxes (U.S. Plaintiff or Defendant) ☐ 871 IRS-Third Party 26 USC 7609

CV12-3428

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

VIII(a).  IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

VIII(b).  RELATED CASES: Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX.  VENUE:  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
     ☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Nevada |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
     ☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER):                          Date April 19, 2012

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |